UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PIER 32 MARINA GROUP, LLC, dba PIER 32 MARINA<br><br>Plaintiff,<br><br>v.<br><br>M/Y CELEBRATION, U.S.C.G. Official No. 971487, a 1990 Hills Marine Motor Yacht of Approximately 63-Feet in Length and 18-Feet in Beam, AND ALL OF HER ENGINES, TACKLE, ACCESSORIES, EQUIPMENT, FURNISHINGS, AND ALL OTHER APPURTENANCES, *in rem*,<br><br>Defendant. | Case No.: 26-cv-0992-RSH-DEB<br><br>IN ADMIRALTY<br><br>**ORDER DIRECTING SALE OF VESSEL AND AUTHORIZING CREDIT BID**<br><br>[ECF No. 16] |

Before the Court is plaintiff Pier 32 Marina Group, LLC's Motion for Interlocutory Vessel Sale and Authorization of Credit Bid. ECF No. 16. For the reasons stated herein, the Court grants the motion.

//

//

## I. FACTUAL AND PROCEDURAL BACKGROUND

On December 4, 2020, Christian Hancock executed a maritime contract for private wharfage (the "Contract") with Plaintiff. ECF No. 4 (First Amended Complaint), at 2. The Contract provided that Plaintiff would provide wharfage services to a vessel of sixty-three feet in length, the M/Y Celebration (the "Celebration")."[1] *Id.* The Contract specifically provided that, upon failure to pay fees due, Plaintiff would have the right to seek the arrest and sale of the Celebration to satisfy the maritime lien accruing as a result of nonpayment. *See* ECF 4-1, at 8–9.

Beginning on October 1, 2025, Hancock ceased making any payment under the Contract. ECF No. 4, at 2. After giving Hancock notice of its intent to terminate the Contract, Plaintiff did so, effective November 12, 2025. *Id.* at 3. Under the Contract, the Celebration was henceforward regarded as a trespasser and began accruing daily wharfage fees. ECF No. 4-1, at 19–20. Plaintiff alleges that the Celebration was "in arrears in an amount of not less than $51,213.40" as of the date of the Amended Complaint. ECF No. 4, at 3.

On February 20, 2026, this Court entered two orders: one authorizing the arrest of the Celebration and one appointing Plaintiff as her substitute custodian. *See* ECF Nos. 5, 6. An arrest warrant was issued and the U.S. Marshal arrested the Celebration on April 1, 2026. ECF No. 10. Plaintiff estimates that it has accrued more than $50,000 in costs as substitute custodian to date. ECF No. 16-1, at 17.

To date, neither the Celebration nor Hancock have entered an appearance nor made any filing in this court. Service was affected consistent with Rule C of the Federal Rules of Civil Procedure, Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeitures Claims (the "Supplemental Rules"), as well as Local Civil Rule C.1(b). *See* ECF Nos. 9, 10, 13. The court entered default against the Celebration on July 1, 2026. ECF No. 14. On September 1, 2026, Plaintiff filed the

[1] The Celebration is the *in rem* Defendant in this case.

instant motion seeking an order directing the U.S. Marshal to sell the Celebration at an auction and to permit Plaintiff to bid on the Celebration at auction in an amount equal to Plaintiff's maritime lien against the vessel. ECF No. 16. The motion is supported by a declaration from Ray Jones, a licensed yacht broker with 45 years of experience who has served as an expert witness in "dozens of vessel arrest cases." ECF No. 16-2 (Decl. of Ray Jones ISO Pl's Mot. for Interlocutory Vessel Sale), at 1–2. Jones estimates that the Celebration has a fair market value of approximately $75,000, is deteriorating at a "significantly accelerated" pace while under arrest, and "will continue to suffer increasing deterioration and depreciation for so long as she remains under arrest." *See id.* at 3–6.

## II. LEGAL STANDARD

The Court has admiralty jurisdiction over cases arising out of the provision of wharfage services to a specific vessel. *See Royal Ins. Co. of Am. v. Pier 39 Ltd. P'ship*, 738 F.2d 1035, 1037 (9th Cir. 1984); *see also Shelter Island Yachtways, Ltd. v. That Certain 1964 Unnamed Barge of Approximately 31-Feet in Length and 16-Feet in Beam*, 2006 WL 8455442, at *3–4 (S.D. Cal. June 28, 2006) (outlining the court's admiralty contract and tort jurisdiction); *Bartell Hotels v. S/L Talus*, 445 F. Supp. 3d 983, 986 (S.D. Cal. 2020) (similar).

Pursuant to 46 U.S.C. § 31342, "a person providing necessaries to a vessel on the order of the owner or a person authorized by the owner . . . has a maritime lien on the vessel." That same provision provides that the person "may bring a civil action in rem to enforce the lien." *Id.* at § 31342(a)(2). At common law, a person who provided wharfage services to a vessel accrued a maritime lien against the vessel for those services that were necessary and reasonable. *See Ex parte Easton*, 95 U.S. 68, 73 (1877) ("Compensation for wharfage may be claimed upon an express or an implied contract, according to the circumstances. Where a price is agreed upon for the use of the wharf, the contract furnishes the measure of compensation; and when the wharf is used without any such agreement, the contract is implied, and the proprietor is entitled

to recover what is just and reasonable for the use of his property and the benefit conferred.”).

Where a person brings a civil action to enforce a maritime lien against a vessel, the Court may order the vessel to be sold if certain conditions are met. Under the Supplemental Rules:

> On application of a party, . . . the court may order all or part of the property sold . . . if:
>
> (A) the attached or arrested property is perishable, or liable to deterioration, decay, or injury by being detained in custody pending the action;
> (B) the expense of keeping the property is excessive or disproportionate; or
> (C) there is an unreasonable delay in securing release of the property.

Supplemental Rule (E)(9)(a)(i); *See also TMF Tr. Ltd. v. M/T Megacore Philomena*, 792 Fed. App’x 472, 474 (9th Cir. Nov. 26, 2019) (applying Rule (E)(9)(a)(i) when reviewing a district court’s order directing an interlocutory sale). Other courts in this district have recognized that, “[t]o justify an interlocutory sale, [p]laintiff need only establish the existence of *one* of the three provisions listed in Rule E(9)(a)(i).” *Bartell Hotels*, 445 F. Supp. 3d at 987 (citation omitted). If a vessel is ordered to be sold in order to satisfy a maritime lien, the Court may authorize the lien holder to credit bid on the vessel at auction. *See* Local Civil Rule E.1(e)(2).

## III. ANALYSIS

### A. Interlocutory Sale

Plaintiff argues that all three conditions of Supplemental Rule (E)(9)(a)(i) are satisfied in this case. *See* ECF No. 16-1, at 8. First, Plaintiff argues, citing Jones’s declaration, that the Celebration is deteriorating at an accelerated pace. *See id.* at 9–10. Jones opined that abandoned vessels, such as the Celebration, deteriorate at a “significantly accelerated” pace “when a vessel remains under arrest and idle for several months, particularly in a saltwater environment,” because the vessel can

receive only "limited maintenance and is deprived of the regular operation necessary to keep its systems functioning properly." ECF No. 16-2, at 3. Jones explained that under the Court's order appointing Plaintiff as the substitute custodian, *see* ECF No. 6, Plaintiff will "not perform the comprehensive maintenance and regular operation that a vessel would ordinarily receive" while the vessel is arrested, which will "result[] in a corresponding decline in both the vessel's physical condition and fair market value." ECF No. 4–5. Various courts have credited Jones's evaluation of a vessel's deterioration and decay while the vessel is arrested. *See, e.g., Bartell Hotels*, 445 F. Supp. 3d at 987–88; *Shelter Cove Marina, Ltd. v. M/Y ISABELLA*, 2017 5906673 (S.D. Cal. Nov. 30, 2017); *Sausalito Yacht Harbor v. S/V SOGGY*, 2019 WL 5091171, at *2 (N.D. Cal. July 5, 2019) *adopted as modified by* 2019 WL 5091161 (N.D. Cal. Aug. 13, 2019). The Celebration has not responded to any filing in this case and the Court sees no reason not to credit Jones's assessment of the Celebration's deterioration in light of his experience and the number of other courts that have credited his expert opinion. The Court finds, pursuant to Supplemental Rule (E)(9)(a)(i)(A), that the Celebration is "liable to deterioration [or] decay . . . [as a result of] being detained in custody pending the [instant] action."

Second, Plaintiff argues that the cost of keeping the Celebration in custody is excessive and disproportionate. ECF No. 16-1, at 14–18. Various courts in this district have found that the cost of keeping a vessel in custody is excessive and disproportionate where maintenance expenses amounted to "several thousand dollars per month, particularly where [the defendant] . . . made no attempt to answer [the] [c]omplaint or secure the [v]essel's release." *Cal. Yacht Marina—Chula Vista, LLC v. S/V OPILY*, 2015 WL 1197540, at *4 (S.D. Cal. Mar. 16, 2015); *see also Bartell Hotels*, 445 F. Supp. 3d at 988 (quoting *Cal. Yacht Marina*, 2015 WL 1197540, at *4) (finding same); *Shelter Cove Marina, Ltd.*, 2017 WL 5906673, at *3 (quoting *Cal. Yacht Marina*, 2015 WL 1197540, at *4) (finding same).

The Celebration is accruing more than $8,000 per month in wharfage and

custodial fees, regular inspection fees, and may be accruing fees related to "additional services, including cleaning, minor maintenance, inspection," or other services, as authorized by this Court's February 20, 2026 order. *See* ECF No. 6. The Court finds that the cost to Plaintiff of keeping the Celebration in custody is excessive and disproportionate pursuant to Supplemental Rule (E)(9)(a)(i)(B).

Third, Plaintiff argues that there has been unreasonable delay in securing release of the Celebration. ECF No. 16-1, at 12–13. The Celebration was arrested on April 1, 2026. ECF No. 10. More than six months have elapsed since that date, and the Celebration is in default and has made no attempt to address the issues raised by this litigation. ECF No. 14 (entry of default). In *TMF Trustee Limited*, the Ninth Circuit recognized that "[c]ourts applying [Supplemental Rule (E)(9)(a)(i)(C)] have held that delays as short as four months are unreasonable, even where the owners are actively engaged in defending the underlying litigation." 792 Fed. App'x at 474. The Ninth Circuit held that the "six-month delay in securing the ship's release" in that case "was unreasonable, and ordering the sale was thus permissible." *Id.* Some district courts have held that, as a rule of thumb, the owner of a vessel should be "given at least four months to bond a vessel absent some other considerations." *Bartell Hotels*, 445 F. Supp. 3d at 988 (quoting *Vinyard Bank v. M/Y Elizabeth I, U.S.C.G. Off. No. 1130283*, 2009 WL 799304, at *10 (S.D. Cal. Mar. 23, 2009)). Those courts typically recognize that a delay of six months in securing the release of the vessel constitutes an unreasonable delay. *Id.* The Court agrees that the delay of six months in securing the release of the Celebration is unreasonable under these circumstances.

"Plaintiff need only establish the existence of *one* of the three provisions listed in" Supplemental Rule (9)(E) "[t]o justify an interlocutory sale." *Bartell Hotels*, 445 F. Supp. 3d at 987 (internal quotation marks and citation omitted). Here, the Court finds that all three provisions of Supplemental Rule (E)(9)(a)(i) are satisfied. Thus, an interlocutory sale is appropriate.

//

**B. Authorization to Credit Bid**

Under Local Civil Rule E.1(e)(2):

> When the Court determines on the merits that a plaintiff or plaintiff in intervention has a valid claim senior in priority to all other parties, that plaintiff in intervention foreclosing a properly recorded and endorsed preferred mortgage on, or other valid security interest in the vessel may bid, without payment of cash, certified check or cashier's check, up to the total amount of the secured indebtedness as established by affidavit filed and served on all other parties no later than seven (7) days prior to the date of sale.

*See also Bartell Hotels*, 445 F. Supp. 3d at 988–89 (applying Local Civil Rule E.1(e)(2) to authorize the plaintiff to credit bid at the auction of the vessel). Here, as in *Bartell Hotels*, "no party has asserted any maritime lien claim against the [Celebration] and Plaintiff is the only maritime lien claimant." *Id.* at 989. Plaintiff served Harbor Island West Marina, listed as a "Possible Lien Claimant," but that entity has not intervened in this case nor is there any evidence that Harbor Island West Marina has a valid claim against the Celebration that is superior to Plaintiff's lien. Plaintiff asserts that it is entitled to a lien of $51,215.40, "which will be established by affidavit pursuant to Local Admiralty Rule E.1(e)(2)," plus costs and expenses. ECF No. 16-1, at 19. Plaintiff does not seek to include attorney's fees in the sum of its credit bid. The Court finds that Plaintiff has a "valid claim senior in priority to all other parties." Thus, the Court determines that Plaintiff is entitled to credit bid in an amount equal to "the total amount of secured indebtedness," provided that Plaintiff files and serves an affidavit establishing the amount of such indebtedness as is required by Local Civil Rule E.1(e)(2). *See Sausalito Yacht Harbor*, 2019 WL 5091171, at *3 (granting authorization to credit bid contingent on plaintiff's filing and serving of an affidavit); *Shelter Cove Marina*, 2017 WL 5906673, at *3 (same); *Bartell Hotels*, 445 F. Supp. 3d at 988–89 (same).

//

//

## IV. CONCLUSION

Based on the foregoing, Plaintiff's Motion for Interlocutory Vessel Sale and Authorization to Credit Bid is **GRANTED**, as follows:

1. **IT IS HEREBY ORDERED** that, consistent with Supplemental Rule (E)(9)(A)(i) and Civil Local Rule E.1(e) the United States Marshal for the Southern District of California is directed to sell the Celebration and her engines, tackle, accessories, equipment, furnishings and appurtenances (the "Sale Property"), as is, where it is, at public sale at the next reasonably available time and date, after having first caused notice of said sale to be published daily in a newspaper of general circulation within the City of San Diego, California for at least ***seven days*** before the date of sale (the "Notice");
2. **IT IS FURTHER ORDERED** that the Notice shall specify the date, time, and location for the sale of the Sale Property;
3. **IT IS FURTHER ORDERED** that, consistent with Civil Local Rule E.1(e)(2), such public notice specify that the last and highest bidder at the sale will be required to deposit with the U.S. Marshal a certified check or a cashier's check in the amount of the full purchase price not to exceed $500, and otherwise $500 or ten percent (10%) of the bid, whichever is greater, and that the balance, if any, of the purchase price shall be paid by certified check or cashier's check before confirmation of the sale or within three days of dismissal of any opposition which may have been filed, exclusive of Saturdays, Sundays and legal holidays;
4. **IT IS FURTHER ORDERED** that the sale be conducted consistent with Local Civil Rule E.1(e)(2);
5. **IT IS FURTHER ORDERED** that any proceeds of said sale shall be held by the United States Marshal or deposited by the United States Marshal in the Registry of this Court, pending further order of this Court;

6. **IT IS FURTHER ORDERED** that the Sale Property shall be sold "free of all . . . claims" pursuant to 46 U.S.C. § 31326;

7. **IT IS FURTHER ORDERED** that Plaintiff is authorized, pursuant to Local Civil Rule E.1(e)(2), to credit bid at the auction of the Sale Property, without cash payment, in a sum equal to its secured interest in the Sale Property, in an amount of $51,213.40, *see* ECF No. 4-2 (attesting to unpaid wharfage fees in that sum), plus its actual costs of suit through the date of sale, including Substitute Custodian fees, U.S. Marshal fees and other custodia legis expenses, with such costs and expenses to be calculated at the rates specified and authorized in the Order Appointing Substitute Custodian and Authorizing Movement of the Sale Property, ECF No. 6, except that such credit bid shall not include attorney's fees;

8. **IT IS FURTHER ORDERED** that should Plaintiff elect to credit bid, Plaintiff is required to file and serve any appearing parties with its Notice of Intent to Credit Bid no later than ***seven days*** prior to the date of the auction of the Sale Property, as is required by Local Civil Rule E.1(e)(2);

9. **IT IS FURTHER ORDERED** that Plaintiff shall not be entitled to credit bid should Plaintiff fail to file and serve a Notice of Intent to Credit Bid, as is required by Local Civil Rule E.1(e)(2);

10. **IT IS FURTHER ORDERED** that the sale shall stand confirmed if, consistent with Local Civil Rule E.1(e)(2), within ***three days*** of the date of the sale, exclusive of Saturdays, Sundays, and legal holidays, no written objection is filed, without the necessity of any affirmative action thereon by a judge, except that no sale shall stand confirmed until the buyer has complied fully with the terms of the purchase; and

11. **IT IS FURTHER ORDERED** that, if no objection to the sale of the Sale Property is timely filed as provided in this order, the U.S. Marshal shall

forthwith issue to the high and successful bidder a Bill of Sale for the Sale Property.

**IT IS SO ORDERED**.

Dated: October 5, 2026

Robert S. Huie

Hon. Robert S. Huie
United States District Judge